**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FIDEL SERRANO GUTIERREZ; MARTHA
CERVANTES; ALMA JANETH SERRANO
CERVANTES,

　　　　　　　　　　*Petitioners,*

　　　　v.

MICHAEL B. MUKASEY, Attorney
General,

　　　　　　　　　　*Respondent.*

No. 04-75650

Agency Nos.
A75-304-498
A75-304-499
A75-304-501

FIDEL SERRANO GUTIERREZ; MARTHA
CERVANTES; ALMA JANETH SERRANO
CERVANTES,

　　　　　　　　　　*Petitioners,*

　　　　v.

MICHAEL B. MUKASEY, Attorney
General,

　　　　　　　　　　*Respondent.*

No. 06-70551

Agency Nos.
A75-304-498
A75-304-499
A75-304-501

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 4, 2008—Pasadena, California

Filed April 2, 2008

Before: J. Clifford Wallace, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Gould

3435

## COUNSEL

Simon Salinas and Carlos A. Cruz, Tustin, California, for the petitioners.

Stacy S. Paddack, Hillel R. Smith, and Jeffery R. Leist, U.S. Department of Justice, Civil Division, Washington, D.C., for respondent United States of America.

**OPINION**

GOULD, Circuit Judge:

Fidel Serrano Gutierrez ("Serrano") petitions for review of a final order issued by the Board of Immigration Appeals ("BIA"), summarily affirming the Immigration Judge's ("IJ") denial of his application for cancellation of removal.[1] In this opinion we address whether Serrano's departure from the United States in 1990 interrupted the accrual of his continuous physical presence for purposes of his application for cancellation of removal. We have jurisdiction pursuant to 8 U.S.C. § 1252. We determine that Serrano's departure interrupted his accrual of continuous physical presence, and thus deny the petition.

**I**

In August of 1997 Serrano was served with a notice to appear ("NTA") and was charged with removability as being an alien in the United States without having been admitted or paroled. Serrano has conceded removability under those charges, but has applied for cancellation of removal.[2] Serrano

---

[1]The petitions of Serrano's wife Martha Cervantes Serrano and their daughter Alma Serrano-Cervantes for review of the IJ's denial of their applications for cancellation of removal, as well as all three petitioners' petition for review of the BIA's denial of their motion to reopen, are the subject of a separate, unpublished memorandum disposition filed contemporaneously with this opinion.

[2]Under INA section 240A(b)(1) the Attorney General may cancel removal of an alien deportable from the United States if the alien: "(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application; (B) has been a person of good moral character during such period; (C) has not been convicted of an offense under [section 212(a)(2), 237(a)(2), or 237(a)(3)] . . . ; and (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1).

illegally entered the United States in December of 1983 and has lived and worked here since then, though some time in the summer of 1990 he briefly returned to Mexico.

At the hearing on Serrano's application for cancellation of removal, the IJ questioned Serrano about his brief return to Mexico to determine whether it had interrupted Serrano's accrual of the ten years of continuous physical presence that is required for cancellation of removal. *See* 8 U.S.C. § 1229b(b)(1)(A). Serrano testified that he had been "deported in '90," clarifying that at some time in 1990 he had gone "to work and Immigration caught [him] at work." He said that he had been detained for one day, that immigration officials had sent him back to Mexico, and that he thought he returned to the United States a couple of days later. When asked whether he had been given an opportunity to go before an immigration court, Serrano responded, "Yes, but since it was so fast I just signed the voluntary departure and that was it." Asked a second time, he said, "I think so, maybe, but all I know is I just had to sign and leave."

The IJ denied Serrano's application for cancellation of removal, concluding that Serrano did not establish adequate continuous physical presence. The IJ applied *In re Romalez-Alcaide*, 23 I&N Dec. 423 (BIA 2002) (en banc), to determine that Serrano's continuous physical presence was interrupted when Serrano was compelled—as the IJ concluded was the case, based on Serrano's testimony—to depart in 1990 under the threat of removal proceedings. The IJ noted that Serrano had been given the opportunity to go before an IJ at that time but had chosen to leave voluntarily instead. Because of this alleged administrative voluntary departure, Serrano fell three years short of the required ten years' continuous physical presence. Though denying Serrano's application for cancellation of removal, the IJ granted Serrano voluntary departure. Serrano appealed to the BIA, which affirmed the IJ without opinion. Serrano in his petition for review asks us to review the denial of his application.

## II

Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), we lack jurisdiction to review any discretionary judgment regarding certain components of the granting of relief for cancellation of removal. *See* 8 U.S.C. § 1252(a)(2)(B). However, we have jurisdiction to review whether an alien has met the "ten years of continuous physical presence requirement because this is an objective, factual inquiry." *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 853 (9th Cir. 2003) (internal quotation marks omitted). We must accord *Chevron* deference to the BIA's statutory interpretations of the Immigration and Naturalization Act ("INA"). *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (*citing Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984)).

We review for substantial evidence the agency's decision concerning an applicant's establishment of ten years of continuous physical presence in the United States. *See Lopez-Alvarado v. Ashcroft*, 371 F.3d 1111, 1115 (9th Cir. 2004), *amended by* 381 F.3d 847 (9th Cir. 2004). Here, because the BIA affirmed the IJ's decision without opinion, the IJ's decision constitutes the final agency action for purposes of our review. *See* 8 C.F.R. § 1003.1(e)(4)(ii); *see also Tapia v. Gonzales*, 430 F.3d 997, 999 (9th Cir. 2005). In reviewing for substantial evidence, we follow this rule: "To obtain reversal under this standard, the petitioner must demonstrate that the evidence not only supports that conclusion, but compels it." *Lopez-Alvarado*, 371 F.3d at 1115 (internal quotation and citation omitted).

## III

**[1]** In order to be eligible for cancellation of removal, an applicant must first have "been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application . . . ." 8

U.S.C. § 1229b(b)(1)(A). Service with an NTA halts an alien's accrual of continuous physical presence. 8 U.S.C. §§ 1229b(d)(1). Because Serrano was served with the present NTA in August of 1997, he would need to establish continuous physical presence in the United States since August of 1987 to meet the requirements of section 1229b(b)(1)(A). If Serrano's brief trip to Mexico in the intervening period interrupted his accrual of presence, then Serrano is statutorily ineligible for cancellation of removal.

**[2]** A regulatory section governing the interruption of continuous physical presence provides that "a period of continuous physical presence is terminated whenever . . . the alien has voluntarily departed under the threat of deportation . . . ." 8 C.F.R. § 240.64(b)(3) (2003). In *In re Romalez-Alcaide*, 23 I & N Dec. 423, 429 (BIA 2002) (en banc), the BIA held, in accordance with this regulation, that an alien who voluntarily departs under threat of deportation breaks his or her continuous physical presence period for cancellation of removal. In *Vasquez-Lopez v. Ashcroft*, 343 F.3d 961, 973 (9th Cir. 2003) (per curiam), we upheld the BIA's interpretation in *Romalez*, stressing that to declare otherwise would be inconsistent with the very purpose of removal.

Serrano does not contest this general proposition but rather its applicability to him, arguing that his return to Mexico should not interrupt his continuous physical presence, *Romalez* notwithstanding. Serrano cites to an Eighth Circuit case, *Reyes-Vasquez v. Ashcroft*, 395 F.3d 903 (8th Cir. 2005), in which our sister circuit stated, "before it may be found that a presence-breaking voluntary departure occurred, the record must contain some evidence that the alien was informed of and accepted its terms." *Id.* at 908. Since the filing of petitioners' initial brief, we have also adopted this principle. *See Ibarra-Flores v. Gonzales*, 439 F.3d 614, 619 (9th Cir. 2006) (holding that an expressed and understood threat of deportation is requisite to presence-breaking voluntary departure).

Serrano argues that he was not advised of his privileges and rights and did not knowingly agree to administrative voluntary departure in 1990, that he did not have the opportunity to be heard by an immigration judge, and that he therefore did not interrupt the accrual of continuous physical presence. Yet Serrano's account of the circumstances of his departure persuasively suggests otherwise. Serrano testified to the IJ that he was caught in a work raid conducted by the then-INS, and, crucially, admitted twice that he had been given the opportunity to go before an immigration court and had explicitly rejected it and signed a voluntary departure document instead, suggesting that he preferred removal because it was "faster."

**[3]** Serrano's case is thus critically different from cases where we have found that substantial evidence did not support the conclusion that the petitioner gave knowing and voluntary consent. In this case, Serrano's own testimony establishes that he was given a choice between deportation proceedings and leaving voluntarily, and that he chose the latter. He alleges no misrepresentation by immigration officials, nor any other circumstances to indicate that his rejection of the offer to be heard by an IJ constituted anything other than a knowing and voluntary agreement to depart in lieu of removal proceedings. Serrano's testimony is substantial evidence supporting the conclusion that Serrano knowingly and voluntarily consented to such voluntary departure. By contrast in *Ibarra-Flores*, 439 F.3d at 620, the petitioner gave plausible testimony that he did not knowingly and voluntarily accept administrative voluntary departure because of the misrepresentations of immigration officers. Based on this testimony, we concluded that substantial evidence did not support the IJ's determination that the petitioner's decision to accept voluntary departure was knowing and voluntary. *Id.* at 619. *See also Tapia v. Gonzales*, 430 F.3d 997, 1002 (9th Cir. 2005) (holding that petitioner—who was merely turned away at the border when trying to reenter the United States after a brief departure, and who did not depart pursuant to a formalized process resulting in an agreement to depart and not to return unless in accordance with the

legal entry process—did not interrupt his accrual of continuous physical presence). We hold here that Serrano's testimony regarding his acceptance of the opportunity to depart from the United States voluntarily, after having been apprehended in a workplace raid, combined with his rejection of an opportunity to go before an IJ, constitutes substantial evidence of a knowing and voluntary consent to administrative voluntary departure in lieu of removal proceedings.

**[4]** "[I]f voluntary departure is accepted in lieu of being placed in deportation or removal proceedings, the alien agrees to relinquish the right to present a claim for relief that might otherwise allow the alien to stay in the United States." *Ibarra-Flores*, 439 F.3d at 620. Because the record contains substantial evidence that immigration officials returned Serrano to Mexico in 1990 under circumstances that constitute voluntary departure under threat of removal proceedings, we reject Serrano's argument that his encounter with immigration officials in 1990 and his resulting voluntary departure from the United States did not interrupt his accrual of presence. Instead, substantial evidence supports the IJ's determination that Serrano voluntarily departed in 1990 in lieu of facing removal proceedings and, as a result of this departure, Serrano has failed to make a *prima facie* case for cancellation of removal.

**PETITION FOR REVIEW DENIED.**