# Matter of Rosa Isela VELASQUEZ-CRUZ, Respondent

*Decided December 10, 2014*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien's departure from the United States following a criminal conviction for illegal entry under section 275(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1325(a)(1) (2012), interrupts the 10-year period of continuous physical presence required to establish eligibility for cancellation of removal under section 240A(b)(1) of the Act, 8 U.S.C. § 1229b(b)(1) (2012).

FOR RESPONDENT: Jaime M. Diez, Esquire, Brownsville, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY: Richard I. Newman, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS and MULLANE, Board Members; LIEBOWITZ, Temporary Board Member.

LIEBOWITZ, Temporary Board Member:

In a decision dated November 5, 2012, an Immigration Judge found the respondent removable as an alien present in the United States without being admitted or paroled under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i) (2012), and denied her application for cancellation of removal under section 240A(b)(1) of the Act, 8 U.S.C. § 1229b(b)(1) (2012).[1] The respondent has appealed from that decision. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who was apprehended in the United States on August 9, 2004. On August 11, 2004, she was convicted in Federal court following her guilty plea to illegal entry into the United States under section 275(a)(1) of the Act, 8 U.S.C. § 1325(a)(1) (2000). She departed the country the day of her conviction but was

---

[1] The Immigration Judge also denied the respondent's application for voluntary departure under section 240B(b)(1) of the Act, 8 U.S.C. § 1229c(b)(1) (2012). The respondent has not contested the denial on appeal, so the issue is not before us.

apprehended in the United States later that day.[2]  On August 13, 2004, she again pled guilty to illegal entry in violation of section 275(a)(1) and was sentenced to 30 days of confinement.  She subsequently left the country.

A notice to appear was issued on March 15, 2010, alleging that the respondent arrived in the United States near Brownsville, Texas, on or about October 1, 2004, and was not then admitted or paroled after inspection by an immigration officer.  At a hearing before the Immigration Judge, the respondent admitted these allegations and conceded that she was removable under section 212(a)(6)(A)(i) of the Act.  She applied for cancellation of removal, asserting that she had been present in the United States since 1988.  The respondent claimed that despite departures in 1998 and 2004, she could establish 10 years of continuous physical presence prior to the issuance of her notice to appear, as required by section 240A(d)(1) of the Act.

The Immigration Judge held that the respondent's departures from the United States following her convictions were pursuant to a sufficiently formal, documented process to interrupt her continuous physical presence.  In his decision, the Immigration Judge relied on *Ascencio-Rodriguez v. Holder*, 595 F.3d 105 (2d Cir. 2010), where an alien's guilty plea under section 275(a)(1) of the Act was found to interrupt his continuous physical presence.  He also cited *Zarate v. Holder*, 671 F.3d 1132 (9th Cir. 2012), which held that an alien's conviction for possession of a false identification document while attempting to enter the United States interrupted his continuous physical presence.  The Immigration Judge therefore calculated that the respondent had only 6 years of continuous physical presence and was not eligible for cancellation of removal.

## II. ISSUE

The issue on appeal is whether an alien's departure from the United States following a criminal conviction for illegal entry under section 275(a)(1) of the Act interrupts the 10-year period of continuous physical presence required to establish eligibility for cancellation of removal under section 240A(b)(1)(A) of the Act.  We hold that a departure subsequent to a conviction under section 275(a)(1) breaks the alien's continuous physical presence for purposes of cancellation of removal.

---

[2]   The evidence indicates that the respondent was found approximately 2 miles from the port of entry in Brownsville, Texas, and was questioned by Border Patrol agents.  Each of the criminal complaints to which the respondent pled guilty state that she "admitted wading the Rio Grande River near Brownsville, Texas . . . thus avoiding inspection." The respondent did not object to the admission of this evidence.

## III. ANALYSIS

Section 240A(b)(1)(A) of the Act requires an alien to have 10 years of continuous physical presence to establish eligibility for cancellation of removal. Under section 240A(d)(2), an alien who has departed the United States for any period in excess of 90 days or for any periods exceeding 180 days in the aggregate is considered to have a break in continuous physical presence. However, this is not the exclusive rule for determining whether a departure interrupts continuous physical presence. *Matter of Romalez*, 23 I&N Dec. 423, 425 (BIA 2002) (en banc); *see also Garcia v. Holder*, 732 F.3d 308, 311 (4th Cir. 2013) (stating that the statute does not provide an exhaustive list of every circumstance terminating an alien's continuous physical presence); *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 218 (5th Cir. 2003) (same).

In *Matter of Romalez*, 23 I&N Dec. at 425−26, we held that continuous physical presence is deemed to end at the time an alien departs the United States in lieu of the initiation of formal removal proceedings, even if the period of absence was within the time limits set forth in section 240A(d)(2). We also found in *Matter of Avilez*, 23 I&N Dec. 799, 805−06 (BIA 2005), that continuous physical presence is interrupted when an immigration official refuses to admit an alien at the border and

> there is evidence that the alien was formally excluded or made subject to an order of expedited removal, was offered and accepted the opportunity to withdraw his or her application for admission, or was subjected to any other formal, documented process pursuant to which the alien was determined to be inadmissible to the United States.[3]

The Federal courts have addressed other scenarios where they found a departure sufficient to break continuous physical presence. For example, in *Ascencio-Rodriguez v. Holder*, 595 F.3d at 113−14, on which the Immigration Judge relied, the United States Court of Appeals for the Second Circuit held that an alien's departure following a conviction for illegal entry broke his continuous physical presence. In that case, the alien was arrested by Border Patrol agents at a checkpoint near Brownsville, Texas, was charged and convicted the same day pursuant to a guilty plea of entering the United States illegally in violation of section 275(a)(1) of the Act, and returned to Mexico. *Id.* at 107−08.

---

3   We concluded in *Matter of Avilez*, 23 I&N Dec. at 805, that the respondent's departure did not interrupt her continuous physical presence because she was only subject to an informal exchange with an immigration official, as a result of which she was refused admission at the border port of entry and was simply directed back across the border.

The court found that this departure broke the alien's continuous physical presence because he was "subjected to a 'formal, documented process' by which he was determined inadmissible." *Id.* at 113 (quoting *Matter of Avilez*, 23 I&N Dec. at 805−06). According to the court, the alien's conviction for illegal entry under section 275(a)(1) of the Act was the "functional equivalent" of a finding of inadmissibility under section 212(a)(6)(A)(i) because the two sections almost mirror each other. *Id.* at 113−14. Specifically, section 275(a)(1) states that that "[a]ny alien who . . . enters or attempts to enter the United States at any time or place other than as designated by immigration officers" is guilty of the crime of illegal entry. Under section 212(a)(6)(A)(i), "[a]n alien . . . who arrives in the United States at any time or place other than as designated by the Attorney General" is inadmissible.[4]

Thus, even though the alien never appeared before an Immigration Judge or was explicitly found to be inadmissible, his conviction after a guilty plea to the crime of illegal entry constituted an admission of facts that rendered him inadmissible. *Id.* at 114−15. Holding that the alien's conviction, coupled with his departure to Mexico, terminated his continuous physical presence, the court upheld our interpretation of section 240A(d)(2) of the Act in *Matter of Romalez* and *Matter of Avilez. Id.* at 115; *see also Garcia v. Holder*, 732 F.3d at 311−12 (finding our interpretation of section 240A to be reasonable and noting that all of the circuit courts that considered the issue found our construction to be permissible) (listing cases).

In *Zarate v. Holder*, 671 F.3d 1132, the alien returned to Mexico following his conviction under 18 U.S.C. § 1028(a)(4) (1988) for possession of fraudulent documents, which he presented while attempting to enter the United States illegally by falsely claiming United States citizenship. The Ninth Circuit held that his departure was sufficient to break his continuous physical presence. The court reasoned that the "sequence of events" leading up to the departure—his use of false identification, as indicated on the Form I-213 (Record of Deportable/Inadmissible Alien); his false claim of United States citizenship (a criminal charge that was dismissed); his arrest; his guilty plea and conviction in Federal court; the 5 days he spent in jail; and his eventual

---

[4] The Second Circuit acknowledged that some convictions for illegal entry under section 275(a) of the Act may not conclusively determine an alien's admissibility, noting, for example, that certain battered women and children may not be deemed inadmissible under section 212(a)(6)(A)(ii) of the Act. *Ascencio-Rodriguez v. Holder*, 595 F.3d at 113−14. The respondent has the burden of establishing her eligibility for relief and does not claim that any exception applies to her. 8 C.F.R. § 1240.8(d) (2014).

return to Mexico in immigration custody—"was a 'far cry' from a mere turn-around at the border."   *Id.* at 1137 (quoting *Ascencio-Rodriguez v. Holder*, 595 F.3d at 113).

The respondent argues on appeal that her circumstances are distinguishable from those of the aliens in *Ascencio-Rodriguez* and *Zarate* because, unlike them, she was not attempting to enter the country when she was apprehended.  Rather, she was already in the United States.  However, the alien in *Ascencio-Rodriguez* was also arrested within the United States near Brownsville, Texas.  In any case, we find no reason for the outcome of this case to change based on the fact that the respondent's apprehension was not literally at the border.[5]

The respondent also emphasizes that she was not subject to a finding of inadmissibility and she never received advisals regarding a possible hearing before an Immigration Judge.  We recognize that the circumstances surrounding each of the respondent's departures are less than clear.  However, the dispositive factor in determining that there was a break in the respondent's continuous physical presence remains the same—she departed the United States pursuant to a conviction for illegal entry under section 275(a)(1) of the Act.

The Second Circuit's reasoning in *Ascencio-Rodriguez v. Holder*, 595 F.3d at 114, in this regard is persuasive.  The court noted that, even though the evidence of the alien's removal was less than clear and he was not given an opportunity to appear before an Immigration Judge, his departure subsequent to a criminal conviction for illegal entry "was more akin to a formal removal than the informal interactions at the border that the BIA and other Courts of Appeals have found insufficient to terminate a period of continuous physical presence."  *Id.* at 115 n.8; *see also Zarate v. Holder*, 671 F.3d at 1137−38 (finding that because the alien appeared before a Federal judge and pled guilty to a crime related to his entry, he had received sufficient process to establish a break in continuous physical presence, even without a finding equivalent to an inadmissibility determination or an opportunity to appear before an Immigration Judge).

---

[5]   We note that regardless of whether an alien who illegally enters the United States is caught at the border or inside the country, he or she will still be required to prove eligibility for admission.  *See* section 235(a)(1) of the Act, 8 U.S.C. § 1225(a)(1) (2012) (stating that an alien who is present in the United States without having been admitted is deemed to be an applicant for admission); *see also Ascencio-Rodriguez v. Holder*, 595 F.3d at 108−09 n.3 (noting that "[a]liens not admitted are treated as 'applicants for admission'" and "are 'deemed to be legally at the border' and bear the burden of establishing their entitlement to admission") (citations omitted)).

Based on our de novo review of the legal issue presented, we agree with the Immigration Judge that the respondent's departures following her convictions for illegal entry under section 275(a)(1) of the Act served to break her continuous physical presence. 8 C.F.R. § 1003.1(d)(3)(ii) (2014). The respondent appeared in Federal criminal court following both arrests and, each time with the assistance of counsel, she pled guilty to a crime that is sufficient to establish her inadmissibility. After each conviction, she departed the United States and immediately reentered without permission. Under these circumstances, "[t]here is no legitimate expectation . . . that an alien could illegally reenter and resume a period of continuous physical presence." *Matter of Romalez*, 23 I&N Dec. at 429. The sequence of events leading to the respondent's departure in each case is a "far cry" from a mere turnaround at the border and is sufficient to constitute a break in continuous physical presence. *Zarate v. Holder*, 671 F.3d at 1137; *Ascencio-Rodriguez v. Holder*, 595 F.3d at 113.

We conclude that each of the respondent's departures following her convictions was pursuant to a "formal, documented process" that resulted in a break in her continuous physical presence. *Matter of Avilez*, 23 I&N Dec. at 805. To hold otherwise would allow aliens to continue to accrue continuous physical presence in a manner that is "contrary to the objectives of [the immigration] laws and the [Board's] relevant decisions." *Ascencio-Rodriguez v. Holder*, 595 F.3d at 114 (citing *Matter of Avilez*, 23 I&N Dec. at 806; *Matter of Romalez*, 23 I&N Dec. at 429); *see also Zarate v. Holder*, 671 F.3d at 1138.

## IV. CONCLUSION

The respondent's departures following her convictions for illegal entry pursuant to section 275(a)(1) of the Act interrupted her continuous physical presence because they were pursuant to a formal, documented process during which she admitted sufficient facts to establish her inadmissibility. Consequently, we agree with the Immigration Judge that the respondent has not met her burden to establish 10 years of continuous physical presence. She is therefore ineligible for cancellation of removal under section 240A(b)(1)(A) of the Act. The Immigration Judge properly pretermitted the respondent's application for that relief without addressing the other eligibility requirements. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.